## THE UNITED STATES DISTRICT COURT

**FILED**

MAR – 6 2007

### District of Columbia

NANCY MAYER WHITTINGTON, CLERK

CASE NUMBER   1:07CV00442

JUDGE: Colleen Kollar-Kotelly

DECK TYPE: Pro se General Civil

DATE STAMP: 03/06/2007

Hadiza I. Wada  *4705 ROCKY SPRING Ln*
    Plaintiff  *BOWIE MD 20715*

Vs.

United States Secret Service  *950 H Street) NW # 912*
The Bank of America _  *WASHINGTON )AC 20223*
Bill Leonard  *100 N TRYON STREET*
*6911 LAUREL BOWIE Rd*  *CHARLOTTE, NC 28202*
*BOWIE MD 20715*

### COMPLAINT

### Jurisdiction and Venue

This court has jurisdiction to hear Plaintiff's complaint because the act upon which the complaint is based, the confiscation of Plaintiff's business account was undertaken by a Federal Agency, The United States Secret Service. The action however occurred at the Bank of America located at 6911 Laurel Bowie Road, Bowie MD 20715. Plaintiff also resides in the State of Maryland.

### Parties

The Defendant's are the United States Secret Service, the Bank of America, Mr. Bill Leonard, branch manager Bank of America and Mr. Thomas J. Mattingly a person of interest whom Plaintiff believes has knowledge of significance to the complaint.

### Facts

1. Plaintiff Hadiza I. Wada is a naturalized citizen of the United States, and a black female of the Islamic faith.  Plaintiff is therefore a member of a protected group under the Civil Rights act of 1964.

2. Plaintiff is a law abiding citizen, and a taxpayer who continues to fulfill her legal obligations by filing and paying taxes every single year.

3. Having worked with an information agency of the federal government for almost two decades, Plaintiff has gone through regular security screenings and had always been cleared.

4. Plaintiff registered a business. Latest Technology International with the State of Maryland in June of 2005.

5. After market survey and preparation for about a year, Plaintiff registered and put up a web site in April 2006.

6. The business was set up as a web based business that will primarily work with public institutions and private businesses in Africa to computerize or upgrade their systems, as fully explained on the "about us" web page of latestech.net

7. On May 25, 2006, Plaintiff opened a business account for Latest Technology International at the local branch of Bank of America located at 6911 Laurel Bowie Road, Bowie MD 20715.

8. Plaintiff had in operation before opening the business account, two other accounts, a Regular Savings account ending in #

XXXXXXXX3012 and Nuevo Futuro Checking account

#XXXXXXXX1340, opened in September 2004.

9.  Latest Technology International was primarily networking from when it was fully set up with a bank account in May of 2006. The first request for a supply of laptops which were designated for some Nigerian institutions of Higher Learning came in October of 2006.

10. The problem started after Plaintiff received a letter from the bank on November 10, 2006 advising Plaintiff that the bank intends to restrict her business account three days from the day of reception, and close it seven days thereafter.

11. On November 1, 2006 a local bank official by the name of Therese made a call to Plaintiff's home number and asked that Plaintiff call back as soon as possible. Plaintiff on international travel at that time got the message from the bank while speaking with her family from abroad. Plaintiff returned the bank's call the next business day in the U.S.

12. Plaintiff was informed by Therese that the bank had mistakenly deposited $40,000 in her business account and needed her verbal permission to pull the money out. Plaintiff told Therese that the money was accounted for. Plaintiff had already confirmed to a business Eagle Sino International Limited (ESIL) expecting a payment from its

Client for which the client claimed it had deposited 40,000; that the money had posted in LTI account.

13. The business (ESIL) for which payment was deposited in Latest Technology's account later apologized for their clients attempting to take their money back. They explained to Plaintiff that after their Client's inability to reach ESIL Manager, (Manager was on travel) to confirm that the deposit has posted, the client's thought it wise to take their deposit back.

14. Plaintiff was advised by ESIL that the depositor (ESIL's client) has since withdrawn his request to have the money sent back. ESIL sent Plaintiff what it claimed as a proof of the request from its client. The request from the client to the bank was sent on October 31, 2006 with the following message "Please disregard our mt 192 dd 061031 as per remitter's request. This matter has been settled directly between remitter and beneficiary."

15. During the week of October 16-20, 2006 Plaintiff for the first time saw, Mr. Bill Leonard at the Bank of America. Mr. Leonard offered to help Plaintiff during which he gave her a routing number that Plaintiff later found upon her return home was not the routing number she had used earlier, nor the number pre-printed on her business checks. Another bank employee later confirmed Plaintiff's concern when she

reconfirmed that the routing number Plaintiff had been using earlier is the correct number.

16. Plaintiff was expecting a full payment of 149,500USd for those laptops meant for some Nigerian institutes, from a Nigerian company who secured the contract. The company sent the money, it was never returned back to them. Though it visually appeared as having posted, the amount was later declared seized and had therefore never reached the Plaintiff.

17. On Wednesday November 15th, 2006 Plaintiff was informed by a staff of the Bank of America located at 6911 Laurel Bowie Rd, Bowie MD 20715 that her business account was frozen.

18. After one complete week of Plaintiff's exhaustive attempts to reach a long distance number provided by the bank for information about her account; with no one returning her calls at a voice mail she reaches, and with no one giving answers to Plaintiff about her account, Plaintiff was finally informed by the Bank of America that the account has been closed and she would receive a check in the mail for the balance of the account.

19. The check for Plaintiff's balance was never sent.

20. On further investigation by Plaintiff she found out that the check was never mailed.

21. After several more attempts to get the bank to honor their verbal commitments, including the commitment to issue the check, Plaintiff was finally informed by letter dated 1st December, 2006 that the bank has turned over the account to the Secret Service.   That was the first information Plaintiff had received in written form from the Bank of America.

22. To date, three complete months with the Secret Service, neither the Bank of America nor the U.S. Secret Service has informed Plaintiff specifically why her business account was closed, and subsequently declared seized by the United States Secret Service.

23. Though Plaintiff has been informed that the Secret Service has specified time limitations for informing Plaintiff about her business account seizure, she has not receive such information.

24. Meanwhile the Secret Service is literally compelling Plaintiff to keep providing them information with no specific issue to address.

25. On 21st February 2007, Plaintiff sent a written response to a correspondence from the Office of the Secret Service dated January 25, 2007, providing all the information she knew in relation to her claims for the return of all funds related to her business.

26. Plaintiff believes the Secret Service is literally harassing her, indicating that she has to appear for an interview, although Plaintiff has since learned that such an interview is voluntary.

27. On arrival at the interview, Plaintiff asked the interviewer, who identified himself as Agent Spivey, whether the interview was voluntary. Spivey responded that it was, but insisted he had to perform the interview anyway and that it would not go away.

28. Plaintiff stated she is not running away from anything but just asserting her rights. She stated she had already sent a full response to the Secret Service's correspondence a week prior to the interview. She had answered all their queries to the best of her abilities. Why is the interview necessary, she inquired.

29. Agent Spivey responded that he is not aware of any correspondence from their office, and has not received any response. That he said after he had already claimed that he heads Plaintiff's investigation in the Washington DC area.

30. Agent Spivey had shown up once at Plaintiff's door on January 23, 2007, although it was at the interview on March 1, 2007 that he finally gave Plaintiff and her Lawyer his name, and hesitated at giving Plaintiff's lawyer his identifying badge number for reference purposes. He did not visually show his identification for authentication of name and number.

31. That interview was conducted at 1100 L Street NW, after Plaintiff insisted that her lawyer set up the interview at the Secret Service's office. Plaintiff explained that if in fact that investigation is official,

the agent should have no problem with our proposal that the interview be conducted at his office building.

32. When we arrived at the meeting Plaintiff realized that her Lawyer is announcing our arrival via a cell phone number for the agent, and not the agent's claimed official line.

33. Plaintiff's private investigation of the address listed on the correspondence from the United States Secret Service as well as the telephone number exchange turned out to be listed not under the investigative section of the Secret Service, but delivery division for the Procurement Section of the U.S. Secret Service where at least in part, contracts are solicited and granted.

34. Meanwhile the Legal Assistant to Plaintiff's former lawyer for her civil case against a federal agency, the Broadcasting Board of Governors, Mr. Thomas Mattingly had informed Plaintiff not long ago that he had wanted to use Plaintiff's Civil Case in the DC court to get his friend's contract money that has been withheld, paid.

35. Mr. Mattingly did not inform Plaintiff which office his friend had contract with.  Furthermore, Mr. Mattingly did not inform Plaintiff of that fact while he was still working with her civil case until after the Judge allowed Plaintiff to release his employer, the Counsel of record for non performance.

<u>Matters to be resolved</u>

The action by the United States Secret Service falls in line with a pattern of financial harassment Plaintiff has been going through ever since she filed a Civil Rights employment related Claim at The U.S. District Court for the District of Columbia in 2003 against an Agency of the Federal Government, the Broadcasting Board of Governors. Such financial harassments, including but not limited to

(a)Withholding of her retirement benefit for six months after separation from the agency, causing plaintiff financial hardship

(b)Shortly thereafter her husband was also relieved of his job, while Plaintiff was still unemployed

(c) Three different years audits by the Internal Revenue Service within just one calendar year.

(d) And now confiscation of funds from Plaintiff's business account, just before her response to the agency's summary judgment was due.

In addition, the IRS (like Mr. Spivey) played what appears to be a deliberate game of amnesia in relation to different year's audits from different offices of the IRS happening in succession. The IRS will only back down and claim they had no knowledge, when the Plaintiff mentions a reference number for other audits still in session or that had just been conducted. At the interview on March 1, 2007, Mr. Spivey claimed to be the person in charge of Plaintiff's account investigation in Washington, yet Mr. Spivey is claiming no knowledge of the letter mailed to Plaintiff

with instructions to respond to a Washington area Office address of the Secret Service. He further claimed he never received Plaintiff's response to the correspondence.

Having found no record in the District Court for the District of Columbia in relation to the seizure, which Plaintiff understands needs a signature from a Federal Judge she inquired at the interview, and was informed by Mr. Spivey that the matter is being handled from Detroit, Michigan.

Plaintiff respectfully asks the court to:

1. Analyze any evidence claimed against the business account and make an immediate decision to allow the release of all funds not affected, pending a full investigation of the affected funds if any.

2. Allow a full investigation of all Defendants so mentioned in relation to their role, official and unofficial, in relation to this complaint.

3. Plaintiffs respectfully asks the court to compel the Secret Service to respect and abide by all laws relating to the issue at hand; including respecting the individual rights of Plaintiff, specifying why the money was held, and allowing Plaintiff to address the specific issue if any in order to get the funds from her business account released. Plaintiff's business is her only way of earning a living.

4. Plaintiff respectfully asks the court to allow a bench trial to fully question Mr. Mattingly to uncover his role in Plaintiff's confiscation of

funds, and the Secret Service's handling of the business account
confiscation from its delivery office in Washington principally dealing
with issues related to procurement.

### RELIEF SOUGHT

1. Plaintiff never received the payment of 149,500USD meant for her
company to conduct a business for profit. Until a full investigation is
completed, Plaintiff holds Mr. Leonard a branch manager of the bank
responsible for that amount and the business profit that could have been
made from it.

2. Plaintiff further requests that the court examine and order the release of
all funds from Plaintiff's business account.

3. In addition, Plaintiff seeks maximum compensations allowed by law for
any (a) Calculable financial loss,

    (b) Potential financial loss for the duration of the confiscation.

    (c)  Destruction of business reputation.

    (d) Financial confinement and hardships created by the actions of the
      Defendants.

    (e) Harassment and intimidation.

    (f) Reasonable attorney fees, costs, and expenses;

    (g) A permanent injunction against continuous harassments by
      Agencies of the federal government

    (h)  Such other relief the court deems appropriate.

Respectfully Submitted

Hadiza Wada

Hadiza Wada
4705 Rocky Spring Lane
Bowie MD 20715

NAME:        Hadiza Wada, DBA
ADDRESS:     4705 Rocky Spring Lane
             Bowie MD 20715
Phone # (301) 809 2898 HM   (240) 401 5775 CELL

### COMPLAINT DETAILS AGAINST THE BANK OF AMERICA

My Name is Hadiza Wada. I am a bank customer from a protected group under the Civil
Rights Act. I am a naturalized Citizen of the United States and an immigrant from Africa
classified as African American. I am female of Muslim faith. I believe that Bank of America
is involved in a targeted discriminatory action and probably fraud. It started like this.

I have a "Business Economy Checking", "Nuevo Futuro checking", and "Regular Savings"
accounts with a local branch of the Bank of America located at 6911 Laurel Bowie Road MD
20715.

On November 1, 2006 a local bank official by the name of Therese made a call to my home
number and asked that I call back as soon as possible. I was at that time on an international
travel, so I received the message when I contacted my family. The following morning on
Friday during business hours in Maryland I returned the call to my local branch. My
immediate thought was may be the bank has noticed an activity from outside the country. I
called to reassure them that I was monitoring my account from abroad, and that it was okay.
To protect my account, I have already subscribed to all online account extra security
additives.

FIRST QUESTIONABLE INCIDENT

To my surprise the teller was not concerned about my account security, but was saying that
a deposit for 40,000 was mistakenly made into my account, and that they need my verbal
approval to pull the money out. I told Therese (they go by first name only at the bank), the
$40,000 in my account is accounted for (documentary evidence available), and that if there is
any further issue they still want to resolve, I will be available on Monday November 6, 2006
because I am actually on my way back to the U.S. the same weekend.

Instead of contacting me if they had any other issue, they sent out a letter that same Monday
November 6, 2006 saying they intend to restrict my account within seven days and close it
seven days thereafter. The number listed on top was my business account. I received the
letter on Friday the 10th sometime after 4:00 pm when I got home. Seven days after the 6th
would be the following Monday the 13th. I immediately ran to the local branch to enquire
more about the letter. Patty Gillis another employee calmed me by saying it may not mean
much, that I should go ahead and call the long distance number listed on the letter. I
immediately started calling the number listed 1-704-386-8909. I left three messages before
5:00pm which was their closing time. No one picked the phone, and I kept reaching a voice
message asking that I leave my last name and contact number. For a week thereafter, after
repeated calls, including some from the local Bank of America Branch, there was no human
response on that number, and no one returned my call from that number.

Monday November 13th I went into the local branch to find out more about the letter and to
check the status of the account. I spoke to the branch manager Bill Leonard. He said the
account appears fine and nothing was listed against it. He advised that I keep calling the
listed number. That same evening the bank sent a letter saying they have closed a credit
card account. I checked the credit card number referenced and found that it belong to a card

the bank issued to me which I had not physically applied for; neither had I ever activated nor used the card. That was bizarre.

Suddenly Wednesday 15th, when I went into the bank to make a wire transfer from my business account I was told it was frozen. Up until that time no one has returned my call. So I called back the number from inside the bank to prove to the bank officials that that number appears bogus, no one picks it, and no one returns my calls. The lady who said she was the highest ranking official that day Crystal, tried herself several times but no one picked the call. We tried other Customer Service numbers from the bank for hours. Personally, I spoke to a Nathaniel Gortes from Customer Solutions on a number provided me by the bank 1-888-717-3999 at 1:40pm. Later at 3:05 the same day, I spoke to Ms Avis Carter also of Customer Solution, when I called back to speak with someone at managerial level. During our conversation I asked her which accounts were affected, and she said just the business account. That same day when I tried to withdraw some money just in case they decide to fowl up my other accounts, I realized all along it affects all accounts.

For the duration of our attempt to find answers that day (about four hours) the department listed on the letter could not be reached. Finally I asked for a letter from the branch that acknowledges my mane, my bank accounts, the balances in them and that they will be available later, so I could relieve the obvious concerns from my business customers, while we try to find out what to do next. Ms Crystal said a letter will be mailed that day by priority mail to be received in two days. She gave me their bank case number that day as #1-301-495-471-0. That letter never came.

On Friday November 17, when still I had not received a call back, I went back to my local branch. I stated to the Branch Manager that someone has to deal with the issue there, because that was where I opened my account; that is where I bring my money and I will not accept calling long distance just to continue getting voice mail anymore. They said again there was nothing they could do. I informed them I have not received the letter also which we discussed Wednesday. I informed them that those verbal conversations had turned up so much contradiction that it is hard to take their verbal words anymore. I informed them freezing my three accounts are causing my business financial loss, and for my other accounts checking and savings; personal and family hardships. When they said they had nothing to do to help, I called in the local Prince Georges' County Police. I told the Police I want to report a theft of my money which the bank will neither allow me to withdraw nor give me any reason why I cannot withdraw my money. I told the police I cannot trust them anymore because they have been giving me verbal contradictory statements that have not been honored.

The case number from the County Police 06-321-1299. The Officers that answered the call were Officers Wilson and Owatt. In his statement to the police, the Local Branch Manager Mr. Bill Leonard stated that he has conferred with his immediate superior in trying to assist with the situation, and he has been informed that a check has been written that very day November 17, and will be mailed to me. He had earlier informed me that day through another employee named Fahad too, that I should expect it by Wednesday November 22, 2006. That check has not arrived to this day.

Finally after a week of calls someone who identified himself as Paul finally picked up the phone on the 17th at 4:19pm and said they had actually closed the account that day. They will mail me a check the following week. How will they mail it, so I know how to expect it? By regular U.S. Postal Service was his reply. I said "you are sending a balance that totals about three hundred sixty thousand by regular mail?" Then he said well make a notation that it be sent by Fedex. On Wednesday November 22, 2006 at 12:30PM I put a call through

to the listed number once again and enquired as to whether they had indeed mailed the check, and was told by a person who identified himself as Tom that it was slated to be mailed out on Friday 24th by FedEx. That turned out to be another verbal lie once again. I have not received anything to this day November 28, 2006.

FRAUD AND DIVERSION OF FUNDS?

One notable incident was that during the week of October 16-20, for the first time I walked into the bank and saw Mr. Leonard sitting at the reception desk. I have never seen him in the bank before. He stopped me and asked what he could do. I had been in the bank earlier because a wire transfer is unusually taking long to post. So he told me that the ABA # is incorrect. He wrote down a different ABA number from what I had been using. On returning home I checked it against what I had been using for my other transfers and found it was totally different. I went back to the bank with my business check to ask how the ABA number can be different from what has been preprinted on my checks. By Mr. Leonard's side was Therese. As soon as I asked isn't this your ABA number, not knowing what transpired before, she quickly retorted "Yes, that is our banking routing number." She quickly understood by the silence that followed that I was directing that question at Mr. Leonard, and she quickly walked away to her cubicle. That ABA number was used for just one transfer for the amount of $149,470.00 (posted on November 2, 2006). I never used it again. For all other transfers my clients continued to use their old ABA that worked free of any problem.

OTHER PROBLEMS

1. To date no one has informed me why my account is being closed.
2. Will that closure be in relation to any incident that I need to know.
3. Will that affect my banking privileges in the future?
4. I have been given various dates for receiving my funds none of which has turned out to be true.
5. The people at the long distance number had never provided their full name for reference purposes, though this I believe is my right as a customer with thousands of dollars at stake with the institution they work for. This sounds very shady to me.

MT : 199 N 001/001
ISN no : 000000 Last update : 2006.12.01/14.25.20.01
OSN no : 0 Journal time : 2006.11.07/15.07.38.00
Sender : JYBADKKKAXXX Receiver : CITIUS33XXXX

1:F01JYBADKKKAXXX000000000000
2:I199CITIUS33XXXXN
4:
:20:87827/ost/5006
:21:citi9532-27oct06
:79:Please disregard our mt 192 dd 061031
as per remitters request. This matter has been
settled directly between remitter and beneficiary
Best regards



**U.S. Department of Homeland Security**
# UNITED STATES SECRET SERVICE

January 25, 2007

�manifest

Attn: Hazida Isa Wada
4705 Rockey Spring Lane
Bowie, MD 20715

RE:     Seizure of Property

|  |  |
|---|---|
| Agency Case Number | : 205-813-71309-S |
| Seizure Number | : 205-2007-001 |
| Asset Identification | : 205-2007-001-0001 |
| Asset Description | : Bank of America Account #████████6055 ██ |
| Asset Value | : $354,144.44 |

Dear Mr. Wada:

On 12/01/2006 at Bowie, MD, the property described above was seized by the United States Secret Service (USSS) for forfeiture from Hazida Isa Wada. The property was used in or acquired in violation of Title 18 USC 1343 and is subject to forfeiture pursuant to 18 USC 981.

You may contest the seizure and forfeiture of the property in United States District Court by filing a Claim or you may agree to the forfeiture of the property and petition the U.S. Secret Service for return of the property or your interest in the property through the administrative process by filing a Petition for Remission or Mitigation.

## To Contest the Forfeiture

If you disagree with the Secret Service's claim that the property is subject to forfeiture and want the case tried in U.S. District Court, you must file a Claim of Ownership with the U.S. Secret Service by March 01, 2007.

The Claim of Ownership must:

1. Identify specific property claimed;
2. State the claimant's interest in the property;
3. Provide documentary evidence of the claimant's interest, if available;
4. State that the claim is not frivolous; and
5. Be signed and made under oath subject to penalty of perjury.

As stated above, the person alleging an interest in the property must swear to the Claim of Ownership under penalty of perjury. For your ready reference, the acceptable language required by statute is as follows:

I declare, (or certify, or verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed On                           Sworn Date
                                      Party Signature

Unsupported submissions signed by attorneys are insufficient to satisfy the requirement that claims be personally executed. A Claim of Ownership form is enclosed for your convenience. Claims of Ownership must be submitted to the address indicated below.

## To Request Remission or Mitigation of Forfeiture

If you agree with the Secret Services claim that the property is subject to forfeiture but wish to have the Secret Service, through the administrative process, determine whether to remit (return the property or value thereof) or mitigate (return the property or value thereof upon imposition of a penalty) the forfeiture, you must submit a Petition for Remission or Mitigation of Forfeiture to the address indicated below.

The petition must include proof of your interest in the property supported by bills of sale, contracts, mortgages, or other satisfactory documentary evidence and must include the facts and circumstances that you believe justify remission or mitigation of forfeiture.

In order to obtain remission or mitigation of the forfeiture, the petitioner must satisfactorily establish the following:

1. With respect to a property interest in existence at the time that the illegal conduct giving rise to forfeiture took place, a petitioner must establish the following:
   a. a legally cognizable property interest in the seized property; and
   b. no knowledge of the conduct giving rise to the forfeiture; or
   c. upon learning of the conduct giving rise to the forfeiture, the petitioner did all that reasonably could be expected under the circumstances to terminate such use of the property.
2. With respect to a property interest acquired after the conduct giving rise to the forfeiture has taken place, a petition must establish:
   a. a legally cognizable property interest in the seized property;
   b. at the time the property interest was acquired, that the petitioner was a bona fide purchaser or seller for value; and
   c. that the petitioner did not know and was reasonably without cause to believe that the property was subject to forfeiture.

3.  A petitioner who cannot establish a property interest in the property, may obtain remission or mitigation of the forfeiture if the petition established that:
    a.  the petitioner is a victim of the offense giving rise to the forfeiture action;
    b.  the petitioner had no knowledge of or was not willfully blind to the violation giving rise to the forfeiture action; and
    c.  the petitioner did all that reasonably could be expected under the circumstances to prevent the activity giving rise to the forfeiture or the illegal use of the property.

The petition should be filed within thirty-five (35) days of the date of this letter.

## Release of Property to Avoid Substantial Hardship

If you chose to contest the forfeiture and file a Claim of Ownership as set forth above, you may be entitled to immediate release of the seized property if:

1.  You have a possessory interest in the property;
2.  You have sufficient ties to the community to provide assurance that the property will be available at the time of the trial;
3.  You show that the continued possession by the Government pending the final disposition of forfeiture proceedings will cause you substantial hardship;
4.  You show that your likely hardship from the continued possession by the Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to you during the pendancy of the proceedings;
5.  The property is not contraband, evidence of a violation of a law, currency, or other monetary instrument, or electronic funds unless such currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business that has been seized;
6.  The property is not, by reason of design or other characteristic, particularly suited for use in illegal activities;
7.  The property is not likely to be used to commit additional criminal acts if returned to you.

A claimant seeking release of property must file a request for Possession of the Property with the Deputy Assistant Director, Office of Investigations, United States Secret Service at the address indicated below.  A request for Possession of the Property must set forth the basis on which the requirements listed above are met.

If not later than fifteen days after receipt of a request for Possession of the Property by the United States Secret Service, the property is not released; the claimant may file a petition for release of the property in the district court in which the seizure warrant was issued or in the district court for the district in which the property was seized.

Please ensure that any correspondence regarding this matter references the Seizure Number provided above.

All documents should be submitted to the following address via FEDEx, DHL, UPS, Airborne, etc.

United States Secret Service
Communications Center – CID/AFS
245 Murray Drive, S.W.
Building #410
Washington, DC 20223

If you have any questions regarding this matter, please contact the Asset Forfeiture Section at (202) 406-5327 by March 01, 2007.

Sincerely,

Stephen G. Howerter
Assistant to the Special Agent In Charge
Criminal Investigative Division


Approved by:
Craig D. Magaw
Special Agent in Charge
Criminal Investigative Division

Attachments



FOR GOVERNMENT AGENCY USE ONLY

DATE CLAIM RECEIVED:

CLAIM TIMELY FILED? Y ☐   N ☐

TO CONTEST THE FORFEITURE ONLY

# SEIZED ASSET CLAIM FORM

NAME: Hadiza I. Wada

ADDRESS: 4705 Rockey Spring Lane
Bowie MD 20715

TELEPHONE NO. (   )

Seizure No.: ▓▓▓ 2007-001
Case No.: ▓▓▓▓ 71309-3
City & State of Seizure: Bowie MD

## PART I

List the items in which you claim an interest. Include sufficient information to identify the items, such as serial numbers, make and model numbers, aircraft tail numbers, photographs, and so forth. Additional space is provided on the back of the form. You may attach additional sheets of paper if more space is needed.

1. $149,470.00 out of the total seized was received by me to perform a business contract
2. The rest of the money was transferred there on instructions of a friend and I am supposed to send it to him
3. _____
4. _____
5. _____
6. _____

## PART II

State your interest in each item of the property listed above. Please provide any documents that support your claim of interest in these items. Supporting documentation includes titles, registrations, bills of sale, receipts, etc. Additional space is provided on the back of the form. You may attach additional sheets of paper if more space is needed.

I received the sum of $149,470.00 from a company
in Nigeria through another company
in order to supply them with notebook
computers once I procured them. I have an
interest in that part of the seized money because of
the contractual obligation I and my business have, to
... supply the computers being that because of

## PART I (continued)

7. _____
8. _____
9. _____
10. _____
11. _____
12. _____

## PART II (continued)

to return it. Please see my attached statement
which includes the documentation regarding my
business agreement which led to the $P49,470.00
being sent to my business account
        The rest of the money is made up of sums
that a long time family friend had directed to be
sent to my account so that I would forward to
him. Please also see my attached statement.

## PART III

### ATTESTATION AND OATH

I attest and declare under penalty of perjury that the information provided in support of
my claim is true and correct, to the best of my knowledge and belief.

HADIZA  WADA
Name (Print)

2/21/07
Date

_Julia Wade_
Signature

### A FALSE STATEMENT OR CLAIM MAY SUBJECT A PERSON TO PROSECUTION UNDER 18 U.S.C. §§ 1001 AND/OR 1621 AND IS PUNISHABLE BY A FINE AND UP TO FIVE YEARS IMPRISONMENT

ATTACHMENT TO SIEZED ASSET CLAIM FORM

### STATEMENT OF HADIZA ISA WADA

The money in my business account comes from two sources. One part of the money, the sum of $149, 470 was prepayment I had received in connection to a business transaction I am involved with through my business Latest Technology International, I agreed to supply laptop computers to a company in Nigeria. The rest of the money was sent there because a long time family friend had requested that payments meant for him be sent there. He had said to me that the money was in connection with his business, which is based in China.

## 1. $149, 470.00 OF THE TOTAL SEIZED.

I claim an interest in the **$149, 470. 00** money seized from my business account because that part of the money was transferred into my business account as payment for the shipment of laptop computers that I had agreed to supply to the Nigerian company -North Land Yard Limited based in Kano, Nigeria. To the best of my knowledge everything about that money is totally legitimate.

The sum of **$149, 470.00** was received by me from North Land Yard, Ltd. The Managing Director of the company is Aminu Mohammed, a business man based in Kano, and Abuja Nigeria. Mr. Mohammed had the money sent to my business Latest Technology International for me to procure and supply his company with notebook computers. Mr. Mohammed needed someone he could trust to use the money to supply the computers as agreed and had been introduced to me through family. I had set up my business primarily to be able to provide these kinds of services to companies and individuals in Africa. (Please see a print out from my website attached hereto (Exhibit 1). Because he had a contract to supply 400 laptop computers to the Ministry of Local Government of Kaduna State in Nigeria, Mr. Mohammed had contacted me for assistance and I informed him I would procure the laptops for him but I was requiring prepayment in order to purchase them and arrange their shipment. Please see the attached copies of our communication in this regard which comprises of the following:

1. A copy of my correspondence to Mr. Aminu Mohammed dated October 6, 2006 forwarding a proforma Invoice as well as the copy of the actual invoice. After we had discussed the transaction, I faxed these documents to Mr. Mohammed while he was in London and I sent the original via FedEx to a person who would receive it for him in Nigeria, so that it would be there on his return. I recall he told me he needed to have the originals before Wednesday that week. (The letter, invoice and FedEx receipt as well as confirmation of delivery is Exhibit #2)

2. On October 9, 2006 Mr. Mohammed sent me confirmation that he had received the fax of the proforma invoice plus the cover letter that I had faxed to him while he was in London, (Exhibit #3).

3. On November 2nd 2006 Mr. Mohammed on behalf of his company North Land Yard Ltd, sent me a letter by email attachment advising that a wire transfer had been sent to Latest Technology International's bank account through the account of a company called New Star Metals, with Fortis Bank for the sum of $149,500.00. This was to cover all the costs of supplying North Land Yard Limited with the laptop computers that they needed in connection with their contract with the Kaduna State Government, (Exhibit 4).

4. Bank of America confirmed to me that the sum of $149,470 was received from New Star Metal International, originating from Fortis Bank, The Netherlands, and credited to my business account on November 2, 2006 (Exhibit 5).

5. At the time I was actually in China trying to arrange to procure the laptop computers from there as all the research I had done about where to get them showed that was the most competitive place I could find them. I wrote on November 4, 2006 and confirmed to Mr. Mohammed that the transfer had been received in my business account and that I was in the process of arranging to supply the computers they needed, (Exhibit 6).

Therefore the purpose for which I received that sum of $149, 470.00 was entirely lawful and the money was in my possession entirely lawfully. I do not have nor ever had any knowledge or information that the money that Mr. Aminu Mohammed caused to be sent to me was not legitimate as the Secret Service appears to claim in its letter of January 25, 2007. I still have not seen any proof of that. Therefore I do not see any justification as to why Bank of America and now the government is holding those funds and to the best of my knowledge there is certainly no justification for the government to keep that part of the money.

Obviously I have a commitment to either provide the laptop computers to North Land Yard, or return the money to the company and its owner Aminu Mohammed, or wherever he directs. If I do not do that I may face legal claims by North Land and Aminu Mohammed; that I have taken their money and refused to supply the laptops as agreed or return the funds. As such I stand to suffer not just the loss of the profits that my business would have made if the transaction had gone through, but also a potentially greater loss if North Land Yard proceeds to claim the entire sum against me in a lawsuit. I have already suffered damage to my business reputation for the delay in performing my part of this transaction and I stand to suffer even more such damage if the funds are not released soon.

## 2. THE REST OF THE MONEY.

The rest of the money after deducting - the remaining $204 674.44 that the Secret Service is holding was deposited because a long time family friend had requested that payments meant for his business be sent there and I was to forward it to him as a favor without any benefit to me.

I had known Balarabe Shehu Ilelah from the time I was a child. We come from the same neighborhood in Bauchi City, Nigeria. After a long time of not having seen him I met

2

him in 1995 when I went to a Women's conference in Beijing, China. Balarabe was working for the Hausa (Nigerian) Language Service of China Radio International and at the time I had been assigned to cover the conference for the Hausa Language Service of the Voice of America.

Having registered my business Latest Technology International in June of 2005, I looked up Balarabe in December 2005, as I had understood he had registered a business in Beijing called Eagle Sino International Limited. As I was trying to get my business started I wanted to get familiar with the business possibilities in China since I had heard so much about it being a growing business hub.

Around August 2006 Balarabe called me and asked if certain payments he was expecting in connection with his business could be sent to my account temporarily in the US. He said he would be traveling and would need to be able to confirm that the funds had been sent. He said he was going to be in transit in places where he could not easily confirm whether the payments had been made. He said if the payments came I would verify to him and then I would send it to his business account in China. He said at the time that it was in connection with a contract he had to supply Chinese batteries to a company in Nigeria.

Thereafter three deposits were made into my business account in August of 2006. I have never met or had any contact with the individuals or entities that transferred the funds into my business account. Balarabe confirmed that the funds were connected with his business transaction as they posted. He gave me his account information while he was on transit in Holland on September 7, 2006, and I wired to his HSBC company account the total of $256,000.00 (Please see exhibit 7). Exhibit 7 also includes a wire transfer sent out to Eagle Sino International on the 8th of November, 2006.

While Balarabe was still away from China, other deposits were made into my business account, which I later learnt from Balarabe, were still in connection with the battery supply contract. I have no details about the battery contract including the amount involved. When he returned to China I asked him to clearly identify the deposits. I told him I would like to clearly ascertain all his money and send it to him to clear my account of any possible confusion with his business. The wire for November 8th ($145,850) was sent then, while he was back in Beijing.

Balarabe on further inquiry later explained that the money was sent on instruction of Mr. Kura who has the contract (Exhibit 8) with Eagle Sino International Limited for the purchase of the Chinese batteries for his company (Kura Brothers) in Nigeria.

That is all I know about the rest of the funds. I had sent Balarabe a memo copy (Exhibit 9) to inform him I am filing my company claim, and for him to file his when he is ready with all the supporting documents that the Secret Service requires to be filed with the claim. I however have not been given any reason or information to date by either the Bank of America or the Secret Service as to why my company account was frozen, closed and later seized by the Secret Service.

3



## Latest Technology International
The Best for Less

# ABOUT US !

LTI is a product of careful research based on need and market availability. For long, developing nations as well as its private company CEOs and business owners, especially in African countries have been searching for a viable way to buy modest equipments and electronic devices just as simple as it is when they order the same thing while visiting in a developed country. For this reason, some have made it a habit to travel abroad to purchase the most simple of devices, just to make sure it is of good quality and it is shipped in a timely fashion for immediate use. You can now order from the comfort of your home and have it delivered as fast as you would want it. Just leave us a note at Sales@latestech.net and we will take it up of from there.

LTI wants, to provide you with equal if not better service than you can receive anywhere, right at your fingertips from whatever country you are ordering. You can now simply order products you need from your office by clicking products@latestech.net , and have it shipped to you. We process your orders through a secure server and deliver the purchased goods through the fastest means you may choose.

Want to modernize your operation, but you're not sure of the most cost effective way to go about it? Tell us what you want to do, how much you budgeted for it, and we will figure out the best way to spend your money, with an eye to getting a return for your investment. Leave detailed information at Query@latestech.net  Do not worry about all the technical jargon associated with IT operations. Because we work with each customer one-on-one, we will walk you through all you need to know to protect your investment and get the best possible usage from it. Our prices are competitive because our search for the right devices are not confined to any one country. If your preference is quality, we give you the best you can afford with your budget. We do the best we can for you, because we want to earn your trust.

Email us at Products@latestech.net, Sales@latestech.net or Query@latestech.net



2/8/2007 10:22 AM

# LATEST TECHNOLOGY INTERNATIONAL

## HADIZA ISA WADA-FOUNDER CEO

6th October, 2006

The Managing Director
North Land Yard Ltd
No. 11 Samora Michael Street
Asokoro, Abuja
Nigeria

Dear Sir,

### RE: PROFORMA INVOICE

Please find attached a copy of a Proforma invoice in relation to your company's purchase of 420 pieces of notebook computers from Latest Technology International.  All details of sales are clearly specified including terms of sales.

A prepayment can be arranged through money bank transfer.  The banking information is provided below.

Bank of America
6911 Laurel Bowie Road
Bowie MD 20715, USA
ABA number: 052001633

Latest Technology International
Account number: 004468376005

Remember to reference your company name and proforma Invoice number on all transactions.  Please fax or email us the information indicating the date, the amount, and name of your sending bank, once you have executed the wire transfer.
Email: Sales@latestech.net, Fax number: USA (301) 352 -8190

Thanks for your business, waiting to hear from you.

Sincerely,

Michel Ilyas - Accounts
(Chief Accountant)

---

**3540 Crain Highway #423, Bowie MD 20715 Ph: (240) 401-5775  Fax: (301) 352-8190**
**Email: Sales@Latestech.net    Site: www.latestech.net**

# LATEST TECHNOLOGY INTERNATIONAL
## HADIZA ISA WADA-FOUNDER CEO



6th October 2006.

The Managing Director, Northland Yard LTD
No. 11 Samora Michael Street,
Asokoro Abuja, Nigeria

## Proforma Invoice

| SELLER / SHIPPER<br>Latest Technology Internatnl<br>3540 Crain Highway # 423<br>Bowie MD USA | Invoice Date & Number<br>6th October, 2006<br>Inv. # F116118 | Customer Order Number<br><br>Q4/008/2006 |
|---|---|---|
| CONSIGNEE<br>The Managing Director, North Land Yard LTD, No. 11 Samora Michael Street Asokoro, Abuja. | Exporting Carrier<br><br>British Airways | Shipping Terms<br><br>Upon Receipt of Full Payment |
| Terms of Delivery & Sales<br>EXW (Ex Works) | Air/Ocean Port of Departure<br>Baltimore/Washington Intl<br>BWI | Final Destination<br>Nnamdi Azikwe Intl<br>ABV |
| Currency of Sale<br>U.S. Dollars | Date of Export<br>17th October, 2006 | 1<br>Total Gross Weight:<br>3150 lbs |

| Commodity Description | Weight | Quantity | Unit Price | Amount |
|---|---|---|---|---|
| Notebooks /Laptops<br>Dell Celeron- Intel<br>/ Compaq<br>Presario<br>( I GHz processor) | 7.5 lbs | 420 | $340 | 142,800.00 |

| These commodities, technology, or software were exported from the United States of America in accordance with the Export Administration Regulations. Diversion contrary to U.S. law is prohibited. It is hereby certified that this invoice shows the actual price of the goods described, that no other invoice has been or will be issued, and that all particulars are true and correct. | Total Number of Packages<br><br>12 Pc Per Box/<br><br>35 pieces | |
|---|---|---|
| | | Packing Costs (Seller) 0 |
| | | Freight Costs $ 4,200.00 |
| | | Other Transportation Costs 0 |
| | | Handling 0 |
| | | Insurance Costs $ 2,384.00 |
| | | Assists 0 |
| | | Additional Fees 0 |
| Signature of          Date<br>Authorized person | | Duties and Taxes (Buyer) N/A |
| | | Invoice Total  $ 149,384.00 |

3540 Crain Highway #423, Bowie MD 20715 Ph: (240) 401-5775  Fax: (301) 352-8190
Email: Sales@Latestech.net     Site: www.latestech.net



Sender's Copy

...nal Air Waybill

**From** LATED...
...SA Phone 240-4...215

Company LATED... ...ct-047
Address 3540 CANON HIGH WAY ...123
City BOWIE    State/Province MD    ZIP/Postal Code ...
Country U.S.A

**2 To**
Recipient's Name ABDULLAHI ZAKARIYAU
Company ZENITH BANK PLC
Address PLOT 2863 ALGERIA STREET
Address WUSE ZONE 3    ...FCT
City ABUJA FCT    State/Province FCT    ZIP/Postal Code ABUJA
Country NIGERIA

Recipient's Tax ID number for Customs purposes

**3 Shipment Information**
Total Packages    Total Weight 0.5    DIM  L __ W __ H __

Commodity Description
COMPLETE IN ENGLISH.

TWO PAGE DOCUMENT

For U.S. Export Only. Check One.

8571 7082 8487

500

Try online shipping at fedex.com.
Questions? Visit our Web site at fedex.com.
Or in the U.S., call 1.800.247.4747. Outside the U.S., call your local FedEx office.

**FedEx.**

US Home

Español

Information Center | Customer Support | Site Map

Search

| Package / Envelope Services | Office / Print Services | Freight Services | Expedited Services |
| Ship | Track | Manage My Account | International Tools |

FedEx Express® Signature Proof of Delivery          ⑦ Quick Help
## No Signature Found

Proof of delivery details appear below, however no signature is currently available for this
FedEx Express shipment. Availability of signature images may take up to 5 days after delivery date.
Please check again later for a signature.

**You can also track:**
- Signature Proof

**Related Links**
- Track more shipments
- My FedEx

### Shipment Information

| | | | |
|---|---|---|---|
| **Tracking number:** | 857470826489 | **Ship date:** | Oct 6, 2006 |
| **Status:** | Delivered | **Delivery date:** | Oct 10, 2006 09:42 |
| **Signed for by:** | .ABDULLAHI | | |
| **Service type:** | International Priority Service | | |

| | | | |
|---|---|---|---|
| **Recipient:** | ABUJA FCT NG | **Shipper:** | BOWIE , MA US |

**Account number** [                    ]

If account number is not entered or it does not match the shipper or third
party payor account number, then only limited SPOD information will be
provided.

### Your next step

⦿ Online letter (no signature)
◯ Fax letter (no signature)
◯ Make a new request

### Please note:
If you have any questions about this shipment, please contact us.

Global Home | Service Info | About FedEx | Investor Relations | Careers | fedex.com Terms of Use | Privacy Policy
This site is protected by copyright and trademark laws under US and International law. All rights reserved. © 1995-2007 FedEx

**NLY** RC: 604315

# NORTH LAND YARD LIMITED *CIVIL ENGINEERING & CONTRACTORS

9th October, 2006

The Managing Director,
Latest Technology International,
3540 Crain Highway #423,
Bowie MD 20716
U.S.A.

Dear Sir,

As per my communication with you from London, our company contract for the supply of the 400 piece of laptops computers is nearly it delivery time to Ministry for Local Government, Kaduna State, we will appreciate your assistance in expediting the purchase and delivery of the computers from my assessment of your website we concluded that your company Latest Technology International, may be the right company to come on board at this time to execute the contract. We are presently trying to transfer the money as soon as possible base on the performer invoice fax to me in London I hope you have mailed the original performer the same day as arranged.

Thanks you

Yours faithfully.
For: NORTH LAND YARD LIMITED

9/10/2006

**Aminu Mohammed**
*Managing Director*

---

No 3 Mallam Jambo Road, Off Ahmadu Bello Way, P. O. Box 2110 Kano. Tel: 064-322008, 311540, Tel/Fax: 064-644747
**Abuja Office:** No 10 Samora Micheal Street, Asokoro Abuja. GSM: 08033004044, 08044004044

**NLY** RC: 604315

# NORTH LAND YARD LIMITED *CIVIL ENGINEERING & CONTRACTORS

2nd November 2006

**The Managing Director,**
**Latest Technology International,**
**3540 Crain Highway #423,**
**Bowie MD 20715,**
**U.S.A.**

Dear Sir,

### Re: Wire Instruction Confirmation

We wish to inform you that a wire instruction valued for 02/11/06 has been sent again to your bank, with the corrected details you gave to us. It was sent through the account of: **NEW STAR METALS** Company with Fortis Bank, same as previously.

Valued is USD149, 500, and it is expected to reach your bank today. Kindly check and confirm this to us as this delay is costing our company so much and time is running out on us for the supply of these computers.

Attached is a copy of the wire instruction reference. We hope you will handle this supply of ours as URGENT as is the case now.

Thank you,

Yours Faithfully,
For:   Northland Yard Ltd

2/11/06

**Aminu Mohammed.**
Managing Director

ANCIËLE MUTATIE IN DETAIL

| | | |
|---|---|---|
| **Rekeningnummer** | **Produknaam** | **Boekingdatum** |
| 97.17.52.923 | 5115 VREEMDE VALUTA REKENING | 02-11-2006 |

| | | |
|---|---|---|
| **Tegenrekening** | **Naam tegenrekening** | |
| **Saldo voor mutatie** | 0,00 USD **Saldo na mutatie** | 0,00 USD |
| **Valutadatum** | 02-11-2006 **Bedrag Inhouding** | 0,00 USD |
| **BGC runnummer** | **BGC betalingskenm** | 200611020001180> |
| **Mutatiebedrag** | -149.500,00 USD **Mutatiesoort** | OPNAME (-) |
| **Aanleverbedrag** | 0,00 | |
| **Correctie** | | |
| **Transactiekantoor** | **Transactieherkomst** | |
| **Transactiedatum** | 02-11-2006 **Transactietijd** | 16:13:42 |
| **Werkplek** | **Medewerker** | |
| **Regio** | 440 **Contract** | |
| **Volgnr afschrift** | **Regelnummer** | |
| **Memo Aanduiding** | 1 2 | 3 |

**Transactie omschrijving**
REFERENTIE 200611020001190D
LATEST TECHNOLOGY INT.

| | | |
|---|---|---|
| Plaats | SCHIEDAM | Datum 02-11-2006 | Tijd 16:36 |
| Kantoor | 0113 | Werkplek 880 | |
| Medewerker | 1 van de best | | Paraaf |

631 (04/06)

**Bank of America**

PAGE 1 OF 1
BANK OF AMERICA, N.A.
WIRE TRANSFER ADVICE
1 FLEET WAY          PA6-580-04-05
SCRANTON, PA          18507

HADIZA WADA SOLE PROP
DBA LATEST TECHNOLOGY INTERNATIONAL
3540 CRAIN HWY # 423
BOWIE MD 20716-1303

DATE: 11/02/06
DIRECT INQUIRIES TO:
800.333.9473 OPTION 3
ACCOUNT: 004468376055

FOLLOWING WIRE WAS CREDITED TODAY:

| | | USD AMOUNT $149,470.00 |
|---|---|---|
| NSACTION REF: | 2006110200118792 | |
| DER'S REF: 11020628I045 | | SERVICE REF: 237090 |
| GINATOR: | NEW STAR METAL INTERNATIONAL | |
| GINATOR'S BANK: | FORTIS BANK NEDERLAND NV | ID: 0971752923 |
| DING BANK: | DEUTSCHE BANK TRUST CO. AMERICAS | ID: 04013685 |
| EFICIARY: | LATEST TECHNOLOGY INT. | ID: 0103 |
| | | ID: 004468376055 |

# LATEST TECHNOLOGY INTERNATIONAL

## HADIZA ISA WADA-FOUNDER CEO

---

4th November, 2006.

The Managing Director
North Land Yard Limited
10 Samora Mitchell Street,
Aso Koro, Abuja

Dear Sir,

BY ELECTRONIC MAIL

In response to our discussion, I am writing to acknowledge that I have
checked LTI company account online and the amount of $149,470.00 was
posted on 2nd November, 2006. The difference of $30.00 from the amount of
149,500.00 that you informed me North Land Yard sent through Fortis Bank
in the Netherlands may be due to the charges for incoming wire transfers
that my bank might have deducted.

As you are aware I am now in China on my way back to the United States.
My booking is for today Saturday November 4, 2006, arriving Washington
same day.

I have been able to check out some notebook computers and have narrowed it
to just one company. One of the company managers will be here with a
sample notebook, so I may inspect the specifications. They agreed to supply
all 400 notebook computers.

I will get in touch with you when I get back to Washington.

Faithfully Yours,

*Hadiza Wada*

Hadiza Wada
Founder CEO,
Latest Technology International

---

3540 Crain Highway #423, Bowie MD 20715 Ph: (240) 401-5775  Fax: (301) 352-8190
Email: Sales@Latestech.net    Site: www.latestech.net



# HP Compaq nx6120商用笔记本电脑隆重上市
# 新一代无线办公全能冠军

**采用英特尔® 迅驰™ 移动计算技术**



MOBILE
TECHNOLOGY

英特尔®迅驰™
移动计算技术

**EAGLE SINO INTERNATIONAL LIMITED**
依格莱国际有限公司

**The Buyer: Kura Brothers Limited**
Address:NO.65E Ado Bayero Rd, Single Market, Kano Nigeria
Contract: 00234-64-636007   639716   631455

**The Seller: Eagle Sino International Limited.**
Address: Unit 2E 2/F Right Emperor Comm BLDG 122-126
          Wellington Street Central, Hong Kong, P.R.China
Contract: 0086-10-85978572

## PRO-FORMA INVOICE FOR BATTERY

NO.122006                                    *DATE:11/12/2006   PAGE:1/1*

| PRODUCT | QUANTITY | UNIT FOB PRICE/CTN | TOTAL FOB COST | 30%DEPOSIT |
|---|---|---|---|---|
| "Tiger head" battery | 20/20ft containers 22000CTN/20ft 24DZ/CTN/ 528000DOZEN | USD$1.22/doz | USD$644,160.00/20 containers | USD$193,248.00 |

**Quality:** New production 100%.
**Country of supply:** China
**Terms of Payment:** By 100% TT payment
**Destination:** Cotonou
**Quantity:** 20/20ft containers
**Date of shipment:** 30th of Dec 2006
**Date of expiry of pro-forma invoice:** 30th of Dec, 2006

**Bank information:**
**Bank name and address: HSBC Beijing Branch, G/F, Block A, COFCO Plaza,**
                        **NO.8 Jianguomennei Dajie, Beijing 100005, China**
**SWIFT code of Beijing Branch: HSBCCNSHBJG**
**Name of Beneficiary: Eagle Sino International Limited**
**Beneficiary's Account NO: 006-135685-055**
**Telephone: (8610)-65260668-1802**

*For and on behalf of*
EAGLE SINO INTERNATIONAL LIMITED
依 格 莱 國 際 有 限 公 司

.............................................................
                    *Authorized Signature(s)*

......................................................
                    Company Name

# MEMORANDUM

DATE: February 20, 2007

TO: Balarabe Shehu Ilelah,
Manager, Owner
Eagle Sino International Ltd.
Beijing, China

FROM: Hadiza I. Wada
Founder, CEO
Latest Technology International
3540 Crain Highway #423
Bowie MD 20716

## RE: SIEZED WIRED DEPOSITS

Having forwarded a copy of a correspondence I received from the United States Secret Service earlier, I write to inform you I intend to file my company (LTI) claim today. Since the bulk of the deposits belong to your business Eagle Sino International Limited (ESIL) I am promptly informing you of my plans.

In relation to your deposits, the breakdown of which we have already discussed, you will need to file a claim (with all supporting documents) to get your money back, if you choose to challenge the seizure as described in the letter. Unfortunately, since that part of the money belongs to you and your company ESIL, it is incumbent on you to prove to the U.S. Secret Service that you should get your money back, as Latest Technology International has no claim or interest vested in any way with the amount deposited, neither does it know any of the depositors, nor transacted any business for which the money was deposited. And it is also incumbent on you to pay your out of pocket expenses for all legal services in relation to and in support of your claim.

*Confidentiality Notice.....Confidentiality Notice.*

The communication above is privileged and confidential information meant only for the person to which it is addressed. If you are not the intended recipient, any disclosure, copying, distribution or use of its content is PROHIBITED and may be punishable by law. If you have received this information in error, please notify the sender and destroy the contents.

I   ATTEST AND DECLARE UNDER PENALTY OF PERJURY THAT THE
INFORMATION PROVIDED IN SUPPORT OF MY CLAIM IS TRUE AND
CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

Date 02-21-07

Hadiza Isa Wada

4

07cv442
F
CKK

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**  HADIZA I. WADA

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** P.G.C
**(EXCEPT IN U.S. PLAINTIFF CASES)**
PRINCE GEORGES COUNTY
MARYLAND

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
PRO SE

**DEFENDANTS**  UNITED STATES SECRET SERVICE
THE BANK OF AMERICA
BILL LEONARD

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE

CASE NUMBER  1:07CV00442

JUDGE: Colleen Kollar-Kotelly

DECK TYPE: Pro se General Civil

DATE STAMP: 03/06/2007

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP FOR PLAINT...**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

**☐ A. Antitrust**

☐ 410 Antitrust

**☐ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☐ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**☐ E. General Civil (Other) OR ☒ F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☒ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

5

| ☐ G. Habeas Corpus/ 2255 | ☐ H. Employment Discrimination | ☐ I. FOIA/PRIVACY ACT | ☐ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ K. Labor/ERISA (non-employment) | ☐ L. Other Civil Rights (non-employment) | ☐ M. Contract | ☐ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ Multi district Litigation    ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   ☐    **DEMAND $**    Check YES only if demanded in complaint **JURY DEMAND:** ☐ YES   ☒ NO

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    ☐ YES   ☐ NO    If yes, please complete related case form.

**DATE** 03/06/07    **SIGNATURE OF ATTORNEY OF RECORD** _Timothy Work_

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd