UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HADIZA I. WADA,

    Plaintiff,

     v.

UNITED STATES SECRET SERVICE,
*et al.*,

    Defendants.

Civil Action No. 07-442 (CKK)

**MEMORANDUM OPINION**
(November 13, 2007)

*Pro Se* Plaintiff, Hadiza I. Wada, brings this cause of action to challenge a number of events related to the seizure of a bank account Plaintiff opened for her business, Latest Technology International ("LTI"). Plaintiff names as Defendants the United States Secret Service ("Secret Service"), which seized the LTI bank account, Bank of America ("BOA"), the bank at which the LTI account was held, and Bill Leonard, an individual identified as the manager of the BOA branch where the LTI account was held. BOA has moved to dismiss Plaintiff's Complaint for failure to state a cause of action, and the Secret Service has moved to dismiss, or in the alternative, to transfer the instant action to the Eastern District of Michigan, where a civil forfeiture proceeding with respect to the LTI account is currently ongoing. Upon a searching review of Plaintiff's Complaint, the filings in connection with the two pending motions to dismiss, the exhibits attached thereto, and the relevant statutes and caselaw, the Court shall grant-in-part and deny-in-part the Secret Service's Motion to Dismiss, and shall grant the Secret Service's Motion to Transfer. Specifically, insofar as Plaintiff seeks to challenge the forfeiture of assets seized from the LTI account, this Court lacks jurisdiction over that challenge, which

Plaintiff is required to pursue via the forfeiture action pending in the Eastern District of Michigan. However, insofar as Plaintiff asserts any claims against the Secret Service beyond a challenge to the forfeiture, the Court shall transfer this action to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a). The Court shall further deny BOA's Motion to Dismiss and, in light of the connections between Plaintiff's allegations against the Secret Service and BOA, shall transfer this action in its entirety to the United States District Court for the Eastern District of Michigan.

## I. BACKGROUND

Plaintiff Wada filed the Complaint in this action *pro se* on March 6, 2007. Plaintiff's Complaint contains an account of the events–from Plaintiff's point of view–relating to the seizure of the LTI account, and includes a number of requests for the Court and claims for relief, but does not affirmatively state either the precise causes of action she purports to bring or the legal foundation for any causes of action. Plaintiff's version of the relevant events are further clarified by the Secret Service's motion to dismiss.

Plaintiff Wada is a Maryland resident and a self-described "law abiding citizen." Compl., Jurisd. and Venue, ¶ 2. In June 2005, Plaintiff registered a business, Latest Technology International, with the State of Maryland. Compl. ¶ 4. Plaintiff describes LTI as "a web based business that will primarily work with public institutions and private businesses in Africa to computerize or upgrade their systems." *Id.* ¶ 6. On May 25, 2006, Plaintiff opened a business checking account for LTI at the Bank of America branch located at 6911 Laurel Bowie Road, Bowie, MD 20715 (hereinafter the "Bowie branch"). *Id.* ¶ 7. Plaintiff had previously opened two personal accounts at the Bowie branch. *Id.* ¶ 8.

Plaintiff's Complaint includes a number of allegations concerning actions by BOA and its

employees during the fall of 2006.  Specifically, Plaintiff alleges that during the week of October

16-20, 2006, at the Bowie branch, Mr. Leonard "offered to help Plaintiff during which he gave

her a routing number that Plaintiff later found . . . was not the routing number she had used

earlier, nor the number pre-printed on her business checks.  Another bank employee later . . .

reconfirmed that the routing number Plaintiff had been using earlier is the correct number."  *Id.* ¶

15.  Plaintiff asserts that she was expecting a payment of $149,500 for laptops ordered from LTI

by a Nigerian company, and that although the Nigerian company sent the money and it "visually

appeared as having posted in the LTI account, the amount was later declared seized and had

therefore never reached the Plaintiff."  *Id.* ¶ 16.  Plaintiff also alleges that on November 1, 2006,

a bank employee contacted Plaintiff and informed her "that the bank had mistakenly deposited

$40,000 in her business account and needed her verbal permission to pull the money out.

Plaintiff told [the bank employee] that the money was accounted for."  *Id.* ¶ 12.  Plaintiff asserts

that the $40,000 was supposed to be posted in the LTI account and that, although the depositor

initially requested that the deposit be cancelled, it withdrew that request on October 31, 2006.  *Id.*

¶¶ 13-14.

Plaintiff next alleges that she received a letter from BOA on November 10, 2006 advising

her that BOA intended to restrict the LTI account three days later, and close it seven days

thereafter.  *Id.* ¶ 10.  A copy of BOA's letter, dated November 6, 2006, is attached to Plaintiff's

Opposition to the Secret Service's motion to dismiss.  *See* Pl.'s Opp'n to Sec. Serv. Mot., Ex.

15.[1]  According to Plaintiff, on November 15, 2006, she was informed by staff at the Bowie

---

[1] The BOA November 6, 2006 letter is not actually marked Exhibit 15, but is the last exhibit to Plaintiff's Opposition to the Secret Service's motion to dismiss, and follows upon exhibits numbered 1 through 14.

branch that the LTI account was frozen.  Compl. ¶ 17.  Plaintiff alleges that "[a]fter one complete
week of [] exhaustive attempts to reach a long distance number provided by the bank for
information about her account . . .[she] was finally informed by [BOA] that the account has been
closed and she would receive a check in the mail for the balance of the account."  *Id.* ¶ 18.
However, Plaintiff asserts that she never received such a check and, on further investigation,
found out that it had never been mailed.  *Id.* ¶¶ 19-20.

According to Plaintiff, she "was finally informed by letter dated 1st December, 2006 that
the bank has turned over the account to the Secret Service."  *Id.* ¶ 21.  Plaintiff's Complaint
alleges that, as of March 6, 2007, neither BOA nor the Secret Service had informed her of why
the LTI account was closed and seized by the Secret Service.  *Id.* ¶ 22.  The Secret Service's
Motion to Dismiss fills in some relevant details.  Specifically, on December 1, 2006, a judge of
the United States District Court for the Eastern District of Michigan issued a warrant to seize all
funds on deposit in the LTI account.  Sec. Serv. Mot. to Dismiss or, in the Alternative, to
Transfer (hereinafter "Sec. Serv. Mot.") ¶ 1.  The warrant issued on probable cause that the funds
in the LTI account were subject to civil forfeiture to the United States government because of
their relationship to a wire-fraud crime in violation of 18 U.S.C. § 1343.  *Id.*; *see also* Pl.'s
Opp'n to Sec. Serv. MTD, Ex. 2 (1/25/07 Letter from Secret Service to Wada) at 1; Ex. 3
(12/1/06 Seizure Warrant, E.D. Mich.).  The total seized from the LTI account was $354,144.44.
Sec. Serv. Mot. ¶ 1; Pl.'s Opp'n to Sec. Serv. Mot., Ex. 2 at 1.

Following the seizure, the Secret Service initiated procedures for forfeiting the funds in
the LTI account to the United States government via the administrative process provided for in

18 U.S.C. §§ 981(d) and 983.  Sec. Serv. Mot. ¶ 3a;[2] Pl.'s Opp'n to Sec. Serv. Mot., Ex. 2; *see also* 18 U.S.C. §§ 981(a)(1)(C), (d) and 983, 19 U.S.C. § 1602, *et seq*.  The Secret Service gave Plaintiff notice of its intent to forfeit the $354,144.44 administratively via letter dated January 25, 2007, Pl.'s Opp'n to Sec. Serv. Mot, Ex. 2, and Plaintiff timely filed a claim of ownership to $149,470.00 of the seized funds.  Sec. Serv. Mot. ¶ 3b; Compl., Ex. "Seized Asset Claim Form."[3] Plaintiff's assertion of her claim foreclosed the possibility of administrative forfeiture of the $354,144.44 and thereafter the funds could only be forfeited through a judicial action initiated by the United States government in federal court within 90 days of Plaintiff's assertion of her claim. Sec. Serv. Mot. ¶ 3b; 18 U.S.C. § 983(a)(3).

In addition to asserting her claim in the ongoing forfeiture action, on March 6, 2007, Plaintiff filed the instant action, asserting that neither the Secret Service nor BOA had informed Plaintiff why the LTI was closed and subsequently seized by the Secret Service.  Compl. ¶ 22. Plaintiff's Complaint further alleges that the Secret Service harassed Plaintiff by suggesting that she was required to appear for an interview that was, in fact, voluntary.  *Id.* ¶ 26.  Plaintiff also includes a number of allegations regarding her contacts with a man identified as Secret Service Agent Spivey, which suggest Plaintiff's skepticism as to the legitimacy of Agent Spivey's

---

[2] The Secret Service's Motion contains two paragraphs numbered "3" on page 2; for ease of reference, the Court refers to the first as paragraph "3a" and the second as paragraph "3b".

[3] Plaintiff's Seized Asset Claim Form is dated February 21, 2007 and, as Exhibit 14 to her Opposition to the Secret Service's Motion to Dismiss, Plaintiff attaches a Fed Ex Airbill indicating that her claim was mailed on February 21, 2007.  The Secret Service claims in its Motion to Dismiss that Plaintiff filed her claim to funds seized from the LTI account on February 26, 2007.

actions. *Id.* ¶¶ 27-33.[4]  Plaintiff's Complaint asks the Court to "[a]nalyze any evidence claimed

against the [LTI] account and make an immediate decision to allow the release of all funds not

affected," "[a]llow a full investigation of all Defendants so mentioned in relation to their role,

official and unofficial, in relation to this complaint," and "compel the Secret Service to respect

and abide by all laws relating to the issue at hand; including respecting the individual rights of

Plaintiff, specifying why the money was held, and allowing Plaintiff to address the specific issue

if any in order to get the funds from [the LTI] account released."  Compl., "Matters to be

resolved".  Plaintiff's Complaint also requests the release of all funds from the LTI account, and

in particular the $149,500 that Plaintiff expected as payment for laptops, as well as damages for

"Calculable financial loss," "Potential financial loss for the duration of the confiscation,"

"Destruction of business reputation," "Financial confinement and hardships created by the

actions of the Defendants," and "Harassment and intimidation."  Compl., Relief Sought.

Plaintiff further seeks attorneys fees, costs, and expenses, and a "permanent injunction against

continuous harassments by Agencies of the federal government."  *Id.*

    On May 11, 2007, BOA moved to dismiss Plaintiff's Complaint with prejudice for failure

to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff filed her

Opposition to BOA's Motion to Dismiss on June 15, 2007, and BOA filed its Reply on July 3,

2007.  On May 25, 2007, the United States commenced a civil action *in rem* in the United States

---

[4] In addition, Plaintiff's Complaint includes vague allegations concerning a Mr. Thomas Mattingly, whom Plaintiff describes as "a person of interest whom Plaintiff believes has knowledge of significance as to the complaint."  Compl., Parties.  According to Plaintiff, Mr. Mattingly is a legal assistant to Plaintiff's former counsel in an unrelated case against the Broadcasting Board of Governors, *id.* ¶¶ 34-35; however, as Plaintiff has not named Mr. Mattingly as a defendant in this action, the Court declines to attempt to interpret the significance of Plaintiff's allegations regarding Mr. Mattingly.

District Court for the Eastern District of Michigan seeking forfeiture of the funds in the LTI

account, which had been seized on December 1, 2006.  Sec. Serv. Mot. ¶ 7; Ex. 1 (Compl. for

Forfeiture).[5]  The forfeiture Complaint alleges that there is evidence that the LTI account

"constitutes proceeds/property of and/or funds and property that are traceable to and/or are

involved in violation(s) of 18 U.S.C. § 1343 (Wire Fraud) and are therefore forfeitable under 18

U.S.C. § 981(a)(1)(C)."  Sec. Serv. Mot. Ex. 1 ¶ 8.  The Complaint further alleges that three

individuals, including one in the Eastern District of Michigan, were instructed to wire a total of

$223,275 into the LTI account in connection with a wire fraud.  *Id.* ¶¶ 8(a)-(j).  On July 2, 2007,

Plaintiff filed a Claim for the assets seized from the LTI account in the civil forfeiture action.

*See* Sec. Serv. Reply, Ex. "Claim for Assets Seized."

On June 19, 2007, the Secret Service moved to dismiss, or in the alternative to transfer

the instant action to the Eastern District of Michigan.  The Secret Service asserts that "[s]ince the

time plaintiff filed her action in this Court, it could neither properly be brought nor maintained in

this jurisdiction."  Sec. Serv. Mot. ¶ 8.  Plaintiff filed an Opposition to the Secret Service's

Motion on July 13, 2007, and the Secret Service filed its Reply on August 2, 2007.  On

September 10, 2007, Plaintiff filed a document entitled "Motion in Support of Request to Rule in

Plaintiff's Favor," which reiterates arguments raised in her two Oppositions and also suggests

that she seeks discovery from BOA.  BOA responded to Plaintiff's Motion on September 20,

2007 by moving to stay discovery in this action, and the Secret Service responded to Plaintiff's

Motion on October 3, 2007.  Plaintiff has not filed a Reply in support of her Motion.

---

[5] In her Opposition to the Secret Service's Motion, Plaintiff asserts that she did not know
that the forfeiture action was proceeding out of Michigan until June 2007.  *See* Pl.'s Opp'n to
Sec. Serv. Mot. at 5-6.

## II.  LEGAL STANDARD

*A.      Federal Rule of Civil Procedure 12(b)(1)*

The Secret Service asserts that this Court lacks jurisdiction over the instant action.  A

court must dismiss a case when it lacks subject matter jurisdiction pursuant to Rule 12(b)(1).  A

court may appropriately dispose of a case under 12(b)(1), and may "consider the complaint

supplemented by undisputed facts evidenced in the record, or the complaint supplemented by

undisputed facts plus the court's resolution of disputed facts."  *Coalition for Underground

Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).  *See also Jerome

Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he

district court may consider materials outside the pleadings in deciding whether to grant a motion

to dismiss for lack of jurisdiction."); *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 n.1 (D.D.C.

2002) ("A court may consider material outside of the pleadings in ruling on a motion to dismiss

for lack of venue, personal jurisdiction or subject matter jurisdiction."); *Vanover v. Hantman*, 77

F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002) ("[W]here a document is

referred to in the complaint and is central to plaintiff's claim, such a document attached to the

motion papers may be considered without converting the motion to one for summary judgment.")

(citing *Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)).

"At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are

to be construed with sufficient liberality to afford all possible inferences favorable to the pleader

on allegations of fact."  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).  In

spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the

plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence.  *Am.*

*Farm Bureau v. Environmental Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

      B.    *Federal Rule of Civil Procedure 12(b)(6)*

      BOA has moved to dismiss this action as against it for failure to state a claim.  The

Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of

the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice

of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550

U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957));

*accord Erickson v. Pardus*, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per curiam).  Although

"detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to

provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and

conclusions" or "a formulaic recitation of the elements of a cause of action."  *Id*. at 1964-65; *see

also Papasan v. Allain*, 478 U.S. 265, 286 (1986).  The complaint's "[f]actual allegations must

be enough to raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp*., 127 S. Ct. at

1965 (citations omitted).

      In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must

construe the complaint in a light most favorable to the plaintiff and must accept as true all

reasonable factual inferences drawn from well-pleaded factual allegations.  *In re United Mine

Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also

Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally

construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be

derived from the facts alleged.").  In addition where, as here, an action is brought by a *pro se*

plaintiff, the Court must construe the plaintiff's filings liberally for such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999). When considering *pro se* complaints, courts may "consider supplemental material filed by a pro se litigant in order to clarify the precise claims being urged." *Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007) (citing *Anyanwutaku v. Moore*, 151 F.3d 1053, 1054 (D.C. Cir. 1998)). "Nonetheless, a *pro se* complaint, like any other, must present a claim upon which relief can be granted by the court." *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994) (quoting *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981)).

     C.     *Motion to Dismiss or Transfer for Improper Venue*

     In addition to arguing that the Court lacks jurisdiction over this case, the Secret Service argues that the Court should dismiss this case because venue is improper in the District of Columbia. When a case is filed in the wrong federal judicial district, the district court in which the action is filed "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). In considering a motion to dismiss for lack of venue, "unless contradicted by an evidentiary showing, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Jyachosky v. Winter*, No. Civ. A. 04-01733, 2006 WL 1805607, * 1 (D.D.C. Jun. 29, 2006) (citations and internal quotations omitted).

     The Secret Service alternatively argues that this Court should exercise its discretion to transfer this case to the Eastern District of Michigan, pursuant to 28 U.S.C. § 1404(a), which

states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Court is afforded broad discretion to decide whether transfer from one jurisdiction to another is proper under 28 U.S.C. § 1404(a). *SEC v. Savoy Indus. Inc.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). The decision to transfer is made by an "individualized, case-by-case consideration of convenience and fairness . . . ." *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964). The Court must therefore initially determine whether venue in the District of Columbia is proper for Plaintiff's claims, before turning to the threshold question under 28 U.S.C. § 1404(a) of whether this action "might have been brought" in the Eastern District of Michigan. *Id.* at 616. In an action brought against an officer or employee of the United States, venue is covered by 28 U.S.C. § 1391(e), which provides:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e).

Even if venue is proper in the Eastern District of Michigan, the Court may transfer a case under 28 U.S.C. § 1404(a) only if the balance of private and public interests weighs in favor of transfer. *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001). Private interest considerations include: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendant; (2) the defendant's choice of forum; (3)

whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the

witnesses; and (6) the ease of access to sources of proof. *See Jumara v. State Farm Ins. Co.*, 55

F.3d 873, 879 (3d Cir. 1995) (citing James W. Moore & Brett A. Ringle, *Federal Practice* ¶

0.345[5] (2d Ed. 1995); 15 Charles A. Wright et al., *Federal Practice and Procedure* §§ 3848-53

(2d ed. 1986)); *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996).

However, the deference normally given to a plaintiff's choice of forum is "lessened when the

plaintiff's forum choice 'lacks meaningful ties to the controversy and [has] no particular interest

in the parties or subject matter.'" *S. Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 86

(D.D.C. 2004) (citing *Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 144 (D.D.C.

1979)). The plaintiff's choice of forum is also "conferred less deference by the court when [it] is

not the plaintiff's home forum." *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 24 (D.D.C.

2002) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981))

The public interest factors include: (1) the degree to which the courts in both venues are

familiar with the governing laws; (2) the relative congestions of the calendars of the transferee

and transferor courts; and (3) the local interest in deciding local controversies at home. *See*

*Jumara*, 55 F.3d at 879-80 (citing Moore & Ringle, *supra*, ¶ 0.345[5]; Wright et al., *supra*, §§

3854; *Trout Unlimited,* 944 F. Supp. at 16.

## III.  DISCUSSION

### A.    *The Court Declines to Consider Plaintiff's Motion in Support of Request to Rule in Plaintiff's Favor*

As noted above, after the completion of briefing regarding the two pending motions to

dismiss, Plaintiff filed a document entitled "Motion in Support of Request to Rule in Plaintiff's

Favor." The Secret Service responded to Plaintiff's "Motion" by asserting that it is essentially a

12

sur-reply that reiterates the arguments Plaintiff made in opposition to the two pending motions to dismiss. *See* Sec. Serv. Resp. to Pl.'s Mot. The Court agrees with the Secret Service that Plaintiff's Motion primarily rehashes her previous arguments, and does not respond to any issues raised in either BOA or the Secret Service's Reply. "A surreply may be filed only by leave of Court, and only to address new matters raised in a reply to which a party would otherwise be unable to respond." *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 276-77 (D.D.C. 2002). The Court shall therefore deny Plaintiff's Motion to the extent that it constitutes an improper sur-reply.

Plaintiff's Motion also asserts that BOA "has adamantly refused to . . . provide any documentary proof of its apparent assertion that the bank should be relieved from any liability," and refers to an e-mail that Plaintiff sent to BOA requesting documents related to the events described in the Complaint. Pl.'s Mot. at 1. In response, BOA correctly notes that under the Federal Rules of Civil Procedure, parties to an action "may not seek discovery from any source before the parties have conferred as required by" the Federal Rules, unless the parties agree to conduct discovery. Fed. R. Civ. P. 26(d). The Federal Rules of Civil Procedure and this District's Local Civil Rules further require parties to meet at least twenty-one (21) days before a scheduling conference is held or a scheduling order is due to the Court, and to confer regarding a number of issues provided for in Local Civil Rule 16.3. Fed. R. Civ. P. 26(f), LCvR 16.3. This Court has not held an initial scheduling conference because of the pending motions to dismiss, has not entered a scheduling order, and it is clear that the parties have neither met as required nor agreed to conduct discovery. As a result, Plaintiff's efforts to pursue written discovery in this action are premature. The Court shall therefore grant BOA's Motion to Stay Discovery. The

parties shall confer as required and pursue discovery, if appropriate, following transfer of this action to the Eastern District of Michigan.

        *B.*      *The Secret Service's Motion to Dismiss for Lack of Jurisdiction*

Plaintiff's Complaint asserts that this Court has jurisdiction over this action "because the act upon which the complaint is based, the confiscation of Plaintiff's business account was undertaken by a Federal agency, The United States Secret Service." Compl., Jurisd. and Venue. Plaintiff does not cite a statute in support of this assertion, but the Court assumes she means to assert jurisdiction over this action pursuant to the federal question statute, 28 U.S.C. § 1331. Nevertheless, insofar as Plaintiff's Complaint challenges the ongoing forfeiture proceeding, the Secret Service appears to be correct that "[s]ince the time plaintiff filed her action in this Court, it could neither properly be brought or maintained in this jurisdiction." Sec. Serv. Mot. ¶ 8.

Plaintiff filed this action on March 6, 2007, primarily seeking the return of the funds seized from the LTI account; however, by that point in time the funds had been seized by the Secret Service pursuant to a warrant issued by the United States District Court for the Eastern District of Michigan. Plaintiff had notice of the seizure and the fact that the funds were subject to forfeiture pursuant to 18 U.S.C. § 981 by virtue of the letter she received from the Secret Service dated January 25, 2007. *See* Pl.'s Opp'n to Sec. Serv. Mot., Ex. 2. Indeed, Plaintiff asserted a claim to $149,470 of the funds seized from the LTI account, as instructed to do by the Secret Service's January 25, 2007 letter. *See* Compl., Ex. "Seized Asset Claim Form." Pursuant to 18 U.S.C. § 981(c), "property taken or detained under [section 981] shall not be repleviable, but shall be deemed to be in the custody of the" head of the agency that seized the property, "subject only to the orders and decrees of the court or the official having jurisdiction thereof." 18

14

U.S.C. § 981(c).  Thus, once the United States District Court for the Eastern District of Michigan issued the warrant to seize the funds from the LTI account, it acquired exclusive jurisdiction over those funds.

Furthermore, D.C. Circuit precedent makes clear that once the Secret Service commenced the administrative forfeiture proceeding pursuant to 18 U.S.C. § 983(a), this Court lacked jurisdiction over the funds seized from the LTI account.  In *Unites States v. Price*, 914 F.2d 1507 (D.C. Cir. 1990), the D.C. Circuit considered whether a criminal defendant could seek the return of property found at the time of his arrest and subsequently subjected to an administrative forfeiture proceeding via a motion under Rule 41(e) of the Federal Rules of Criminal Procedure. *Id.* at 1507-08.  In determining that the defendant could not do so, the D.C. Circuit held "that once the Government initiates an administrative forfeiture proceeding and the property is not the subject of an ongoing criminal proceeding, the District Court has no jurisdiction to resolve the issue of return of property." *Id.* at 1508, 1511.  Rather, the defendant's "remedy was to challenge forfeiture in the administrative proceeding." *Id.*  The fact that the defendant's property in *Price* was seized pursuant to 21 U.S.C. § 881 rather that 18 U.S.C. § 981, and that the defendant sought to challenge the forfeiture through a Rule 41(e) motion does not alter the fact that "Congress intended for the administrative forfeiture scheme to preempt the District Court's jurisdiction so as to provide an exclusive avenue to resolve forfeiture disputes." *Id.* at 1510.

The Court therefore lacked jurisdiction over Plaintiff's challenge to the forfeiture once the administrative proceeding was initiated, and continues to lack jurisdiction over Plaintiff's challenge now that the civil forfeiture action has been commenced in the Eastern District of Michigan.  Pursuant to 18 U.S.C. § 983(a)(3)(A), once Plaintiff asserted her claim to a portion of

the funds seized from the LTI account, the government was required to file a forfeiture complaint within 90 days. 18 U.S.C. § 983(a)(3)(A). The United States has now done so and Plaintiff, in turn, has filed a Claim for the assets seized from the LTI account in the civil forfeiture action. *See* Sec. Serv. Reply, Ex. "Claim for Assets Seized."[6] As a result, the disposition of Plaintiff's Claim to those assets is subject to 18 U.S.C. § 983(f), which provides for the release of seized property as part of the civil forfeiture action pending in the Eastern District of Michigan. Plaintiff does not purport to assert a claim under section 983(f) in this action, and the proper jurisdiction for resolving such a claim is in the ongoing civil forfeiture action. *See* 18 U.S.C. § 983(f)(2) ("A claimant seeking release of property under this subsection must request possession of the property from the appropriate official, and the request must set forth the basis on which" the claimant is entitled to return of seized property pending the adjudication of the forfeiture); 18 U.S.C. § 983(3)(A) (If the property is not released under 18 U.S.C. § 983(f)(2), "the claimant may file a petition in the district court in which the complaint has been filed").

In light of the foregoing, the Court easily concludes that it lacks jurisdiction over Plaintiff's challenge to the forfeiture of funds seized from the LTI account. To the extent that Plaintiff wants to assert such a challenge, she must do so (and appears to be doing so) via the ongoing civil forfeiture action in the Eastern District of Michigan, as provided for in 18 U.S.C. § 983. The Court shall therefore dismiss the instant action for lack of subject matter jurisdiction, insofar as it challenges the forfeiture of assets seized from the LTI account.

---

[6] The Court notes that insofar as Plaintiff's Opposition to the Secret Service's Motion questions whether the United States timely filed the forfeiture complaint in the Eastern District of Michigan as required by 18 U.S.C. § 983(a)(3)(A) and challenges the Eastern District of Michigan's jurisdiction over the forfeiture action, Plaintiff also raises those challenges in her Claim in the forfeiture action. *See* Pl.'s Opp'n to Sec. Serv. Mot. at 3-5, 8-9; Sec. Serv. Reply, Ex. "Claim for Assets Seized" at 2-3.

C.    The Secret Service's Motion to Dismiss, or in the Alternative to Transfer, for
       Improper Venue

The Secret Service's Motion treats Plaintiff's Complaint as if it only asserts a challenge

to the forfeiture of assets seized from the LTI account.  The Court agrees that such a challenge is

clearly the primary thrust of Plaintiff's action against the Secret Service.  However, Plaintiff's

Complaint also vaguely alleges that the Secret Service's actions and Agent Spivey's conduct

towards Plaintiff are part of "a pattern of financial harassment Plaintiff has been going through

ever since she filed a Civil Rights employment related Claim . . . in 2003 against an Agency of

the Federal Government," including withholding of her retirement benefit, her husband's job

loss, and three audits conducted by the Internal Revenue Service.  Compl., "Matters to be

resolved".  In addition, Plaintiff's Opposition to the Secret Service's Motion indicates that

Plaintiff may be trying to assert a claim for a violation of some statutory or constitutional right.

*See* Pl.'s Opp'n to Sec. Serv. Mot. at 2-3 (discussing qualified immunity regarding a violation of

a constitutional or statutory right and citing *Saucier v. Katz*, 533 U.S. 194 (2001), a case

involving an action pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 402 U.S. 388

(1971)).  Even a *pro se* plaintiff must state a claim upon which relief can be granted; however,

the Secret Service has not moved to dismiss Plaintiff's case for failure to state a claim.  The

Court therefore declines to consider whether the remaining allegations in Plaintiff's

Complaint–taken with her Opposition to the Secret Service's Motion–may state a claim upon

which relief can be granted.

Even if Plaintiff may state a claim, however, it is clear that the District of Columbia is the

improper venue for the resolution of that claim.  The Secret Service points the Court to 28 U.S.C.

§ 1355(a) and § 1395, which address venue for forfeiture actions; however, if Plaintiff has any

claim beyond that related to her forfeiture action, it would be governed by the general venue

statute, 28 U.S.C. § 1391(e).  Pursuant to that statute:

> A civil action in which a defendant is an officer or employee of the United States
> or any agency thereof acting in his official capacity or under color of legal
> authority, or an agency of the United States, or the United States, may, except as
> otherwise provided by law, be brought in any judicial district in which (1) a
> defendant in the action resides, (2) a substantial part of the events or omissions
> giving rise to the claim occurred, or a substantial part of property that is the
> subject of the action is situated, or (3) the plaintiff resides if no real property is
> involved in the action.

28 U.S.C. § 1391(e).  On the face of 28 U.S.C. § 1391(e), then, if Plaintiff had a constitutional

action against the Secret Service, it might be brought in the District of Columbia because the

Secret Service "resides" here, but clearly could be brought in Maryland (where Plaintiff resides

and the LTI account was located) or Michigan (where the assets seized from the LTI account

have been brought pursuant to the forfeiture action).  The Court therefore does not deem it

appropriate to dismiss or transfer this case pursuant to 28 U.S.C. § 1406(a), but rather will

consider whether to transfer any remaining claim in this action in the interest of justice pursuant

to 28 U.S.C. § 1404(a).

That statute provides that a case properly filed in a judicial district may be transferred to

"any other district or division where it might have been brought" "for the convenience of parties

and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  As noted above, this action could

have been brought in either Maryland or Michigan pursuant to 28 U.S.C. § 1391(e), and the

Court therefore considers the relevant private and public interest factors.  *Greater Yellowstone*

*Coalition*, 180 F. Supp. 2d at 127.  Plaintiff opposes the transfer of venue in this action, however,

she asserts only that she "resides and operates her business within the local D.C. metropolitan

area," such that "both parties in the case will not be unduly burdened by trial at this court" and

18

she would be saved the expenses involved in adjudicating this action in Michigan.  Pl.'s Opp'n to

Sec. Serv. Mot. at 7-8.[7]   In fact, Plaintiff is a Maryland resident, and her choice of forum is

entitled to less than ordinary deference as she is not a resident of the District of Columbia and

this action bears no "meaningful ties" to the District of Columbia.  *S. Utah Wilderness Alliance*,

315 F. Supp. 2d at 86.  Indeed, "venue is only proper in the District of Columbia 'if sufficient

activity giving rise to the plaintiffs' cause of action' occurred here," and based on Plaintiff's

Complaint it appears that very little, if any, activity giving rise to Plaintiff's cause of action

occurred in the District of Columbia.  *Bertha El-Bey v. United States*, No. Civ. A. 04-1231, 2004

WL 2418306 (D.D.C. Sept. 28, 2004) (citing *Franz v. United States*, 591 F. Supp. 374, 378

(D.D.C. 1984)).  The LTI account was located in Maryland, Plaintiff is a Maryland resident, and

the funds in question are now in Michigan.  As the Secret Service correctly points out, the only

connections between this action and this District are Plaintiff's allegations that Agent Spivey told

her that he headed the investigation in the Washington, D.C. area, and that he interviewed

Plaintiff in Washington, D.C.  Sec. Serv. Reply at 5; Compl. ¶¶ 29, 31.

   Furthermore, the Secret Service prefers to litigate this action in the Eastern District of

Michigan, and that is certainly a more logical venue in light of the ongoing civil forfeiture action

in that district.  It is not at all clear to the Court that Plaintiff has any actionable claims beyond

her challenge to the forfeiture; however, to the extent that she does, those claims are interwoven

with the ongoing forfeiture action.  As a result, the private interest factors favor transfer of this

action to the Eastern District of Michigan because any witnesses or relevant proof will most

---

   [7]   Plaintiff also asserts that she may be deprived of a fair trial on this action in the Eastern
District of Michigan because it is "a region that is becoming increasingly notorious for civil
forfeiture cases against Muslim businesses."  Pl.'s Opp'n to Sec. Serv. Mot. at 8.  The Court
declines to consider this baseless aspersion against the Eastern District of Michigan.

likely be available in that district in connection with the forfeiture action. Moreover, the relevant

public interest factors are neutral or favor transfer. To the extent Plaintiff has any claims beyond

her challenge to the forfeiture action, they stem from federal law, which the Eastern District of

Michigan is equally equipped to handle, and the Court has not been presented with evidence of

the relative congestion of the calendars of the Eastern District of Michigan and this District.

Finally, to the extent that Plaintiff's claims relate to a forfeiture action initiated in the Eastern

District of Michigan as a result of a wire fraud involving a resident of that district, the Eastern

District of Michigan may have a superior interest in adjudicating this action. Thus, to the extent

that Plaintiff has any claims beyond her challenge to the forfeiture of assets seized from the LTI

account, the Court shall transfer those claims to Eastern District of Michigan pursuant to 28

U.S.C. § 1404(a).

       *D.*     *BOA's Motion to Dismiss*

      Finally, the Court turns to BOA's Motion to Dismiss Plaintiff's Complaint for failure to

state a claim. BOA's Motion notes that Plaintiff's Complaint does not list causes of action and

asserts that because Plaintiff admits that the funds in the LTI account have been seized by the

Secret Service, "the Complaint does not allege any facts upon which Plaintiff could maintain an

independent cause of action against BOA." BOA Mot. at 2-3. BOA is correct that Plaintiff's

Complaint does not meet even the notice pleading standard of Federal Rule of Civil Procedure

8(a)(2) with respect to BOA because it does not hint at its legal claim or the grounds upon which

any claim would rest. Plaintiff attempts to remedy that situation, however, in her Opposition to

BOA's Motion, by asserting that BOA unnecessarily delayed providing Plaintiff with

information as to why her account was frozen, that BOA may have racially profiled Plaintiff and,

most significantly, that "BOA violated their fiduciary responsibility and private contract to safely

hold funds entrusted to it." Pl.'s Opp'n to BOA Mot. at 4-5. Furthermore, Plaintiff specifically

asserts that she "attaches a clarified statement of claims to [her Opposition] pursuant to Rule 15

of the Federal Rules for Civil Procedure." *Id.* at 2. In turn, Plaintiff attaches to her Opposition a

document entitled "Claims for Relief (Applicable to BOA Only)" in which she sets forth claims

for "Breach of Trust," "Negligence and Betrayal," and "Complicity," and asserts under her claim

for "Negligence and Betrayal" that BOA exhibited "significant lapses" in the performance of its

fiduciary responsibilities to Plaintiff. Pl.'s Opp'n, Ex. at 1-2.

 BOA does not respond to the substance of Plaintiff's revised claims in its Reply, but

rather asserts that "Plaintiff's attempt to amend the Complaint is procedurally defective" because

Plaintiff may only amend as a matter of right before a responsive pleading is served and both

BOA and the Secret Service have filed motions to dismiss. BOA Reply. Unfortunately for

BOA, "a motion to dismiss is not ordinarily considered a 'responsive pleading' under Rule

15(a)" of the Federal Rules of Civil Procedure. *Confederate Mem'l Ass'n, Inc.*, 995 F.2d 295,

299 (D.C. Cir. 1993). BOA also takes Plaintiff to task for failing to attach a proposed amended

pleading as required by Local Civil Rule 15.1, BOA Reply at 2; however, Plaintiff appears to

have attempted to do just that by attaching her "Claims for Relief" document. It would, of

course, have been preferable for Plaintiff to incorporate her "Claims for Relief" into an amended

complaint, but as Plaintiff is proceeding in this action *pro se*, the Court finds her proposed

amendment sufficient under the circumstances.

 The Court therefore considers Plaintiff's Opposition to BOA's Motion to constitute a

valid amendment to her Complaint, and is instructed in this respect by the D.C. Circuit's opinion

in *Richardson v. United States*.  In that case, the D.C. Circuit determined that the district court

erred in refusing to consider a *pro se* plaintiff's reply to a motion to dismiss as an amendment to

his original complaint, based on four factors.  193 F.3d at 548.  First, as noted above, courts are

required to construe *pro se* filings liberally.  *Id.*  Second, at the point when the plaintiff filed his

reply, he could have amended his claim as of right, and courts freely grant *pro se* plaintiffs leave

to amend.  *Id.* at 548-49.  Third, "the District Court clearly understood that [the plaintiff] both

recognized the need for and attempted to make a change to his original complaint."  *Id.* at 549.

Fourth, and finally, there was no evidence of prejudice to the government if the plaintiff were

allowed to amend his complaint.  *Id.*  Each of these factors applies with equal force to the instant

case.  Plaintiff is proceeding *pro se*, could have amended her complaint as of right, clearly

recognized the need for and attempted to make an amendment to her original complaint, and

BOA has not argued that it would be prejudiced if Plaintiff were allowed to amend her

Complaint.

   As a result, the Court shall consider Plaintiff's Opposition and her accompanying

"Claims for Relief" as amendments to her original complaint.  When viewed under the liberal

standard afforded *pro se* pleadings, Plaintiff's Complaint as amended survives a motion to

dismiss for failure to state a claim.  At the least, Plaintiff's amended complaint sufficiently states

a claim for breach of fiduciary duty against BOA.  The seizure warrant issued from the Eastern

District of Michigan on December 1, 2006; however, according to Plaintiff's Complaint and her

exhibit to her Opposition to the Secret Service's Motion to Dismiss, Plaintiff received a letter

from BOA dated November 6, 2006, advising her that BOA intended to restrict the LTI account

seven days later, and close it seven days thereafter.  Compl. ¶ 10; Pl.'s Opp'n to Sec. Serv. Mot.,

Ex. 15.  Plaintiff further alleges that BOA unnecessarily delayed providing her information regarding the closure of her account.  Pl.'s Opp'n to BOA Mot. at 4.  While there may be a perfectly valid reason for BOA's closure of Plaintiff's account a month prior to the seizure warrant and BOA's alleged actions during the fall of 2006, BOA has failed to provide one as of yet.  The Court shall therefore deny BOA's motion to dismiss Plaintiff's Complaint for failure to state a claim.

To the extent that Plaintiff may maintain a cause of action against BOA, however, the Court assumes that BOA's defense of that action will rely heavily on the ongoing forfeiture action in the Eastern District of Michigan.  As discussed above, the Court shall transfer any claims that Plaintiff may have against the Secret Service beyond her challenge to the forfeiture action to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a).  In light of the inherent connection between the ongoing forfeiture action and Plaintiff's claims against BOA, the Court finds it appropriate to transfer those claims to the Eastern District of Michigan as well.[8] In the interests of justice and judicial economy, the Court shall therefore transfer the instant action in its entirety to the Eastern District of Michigan, so that all claims relating to and stemming from the ongoing forfeiture action may be resolved in a common jurisdiction.

## IV.  CONCLUSION

For the foregoing reasons, the Court shall deny Plaintiff's Motion in Support of Request

---

[8] In addition, the Court notes that in its Reply, BOA joined in and incorporated the Secret Service's motion to dismiss this action for lack of jurisdiction, asserting that the United States District Court for the Eastern District of Michigan "issued the warrant leading to the seizure of Plaintiff's BOA account and that Court has jurisdiction over the funds seized."  BOA Reply at 3. Although this assertion does not constitute assent to transferring this action to the Eastern District of Michigan, it at least indicates BOA's acknowledgment that it may be the proper venue for resolution of issues relating to and stemming from the ongoing forfeiture action there.

to Rule in Plaintiff's Favor, shall grant-in-part and deny-in-part the Secret Service's Motion to Dismiss, and shall grant the Secret Service's alternative Motion to Transfer. The Court shall deny BOA's Motion to Dismiss, and shall transfer this action in its entirety to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a). In addition, the Court shall grant BOA's Motion to Stay Discovery. The parties may pursue discovery, if appropriate, upon transfer of this action to the Eastern District of Michigan.

Date:   November 13, 2007

Copy to:
Hadiza I. Wada
4705 Rocky Spring Lane
Bowie, MD 20715

                                                 _/s/_____
                                                 COLLEEN KOLLAR-KOTELLY
                                                 United States District Judge